TEXAS WORKERS' COMPENSATION
INSURANCE FUND, Appellant,

v.

Boyd T. TRAVIS, and Wife, Linda Travis,
Individually and as Next Friend and
Natural Guardians of Candace Travis
and Markie Travis, Minor Children, and
Lillian Thoele, Appellees.

No. 02–94–203–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 28, 1995.

Mark T. Curry, Hughes, Watters & Aska-
nase, L.L.P., Houston, for appellant.

Clifford A. Bridwell, Wichita Falls, Mikal
S. Lambert, Fillmore & Purtle, Wichita
Falls, Stephen Marsh (Ad litem), Wichita
Falls, for appellees.

Before RICHARDS, J., CHUCK MILLER, J. (Sitting by Assignment), and JOE SPURLOCK II, J. (Retired) (Sitting by Assignment).

## OPINION

RICHARDS, Justice.

Texas Workers' Compensation Insurance Fund (Appellant) appeals from the trial court's judgment and distribution of settlement proceeds. Appellant intervened in the case below to recover monies owed because of a workers' compensation lien. The Appellees include the injured employee, his beneficiaries, and the third-party tortfeasor from the case below.

In a single point of error, Appellant asserts the trial court erred in apportioning the third-party recovery from the settlement between Boyd Travis (Travis), his beneficiaries, and Appellant such that Appellant was denied its full statutory right to a lien on the Travis' recovery in order to recoup the costs of future benefit payments. In a single cross-point, the attorney ad litem claims he should recover attorney's fees and costs for the post-trial and appeals process.

We sustain Appellant's point of error because the settlement apportionment circumvents the intent of the applicable workers' compensation statute. We overrule the cross-point of the attorney ad litem. We reverse the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant is the workers' compensation carrier for James Lane Air Conditioning, the employer of Travis. On February 23, 1993, Travis was injured in an automobile accident involving Lillian Thoele while Travis was in the course and scope of his employment. Appellant paid workers' compensation benefits and medical expenses to Travis.

On May 5, 1994, Travis, his wife and his two minor children filed a friendly suit against Thoele, alleging she was negligent in the operation of her vehicle. The Appellees had arranged a settlement with Thoele for $100,000.00. It is undisputed that the purpose of filing the lawsuit was to obtain court approval for the minor children's settlement with Thoele.

On the same day the suit was filed, the court held a settlement conference and approved the previously negotiated agreed settlement in connection with the case. The court apportioned the previously agreed-to settlement of $100,000.00 between the plaintiffs and included Appellant. The apportionment allocated $659.24 to Travis, $59,500.00 to his wife, $250.00 to each of his two children, and $39,340.76 to Appellant. There is no dispute that Appellant was aware of a settlement conference being conducted; however, there is a dispute among the parties on whether Appellant was aware of the nature of the settlement conference.

Appellant filed a petition for intervention, a motion to set aside the judgment, and a motion for new trial. Appellant now appeals the apportionment of the settlement proceeds. Travis filed a response to Appellant's appeal. Travis' wife, however, did not file a brief on appeal. The attorney ad litem, who was appointed at trial to represent Travis' two minor children, did file a brief on appeal. The ad litem's brief does not address the substance of Appellant's appeal, but does assert a claim for attorney ad litem fees for the post-trial and appellate process.

## PROPRIETY OF SETTLEMENT STRUCTURE

In its sole point of error, Appellant argues the apportionment between Travis and his wife eliminated Appellant's statutory credit against Travis' excess recovery, forcing Appellant to continue paying Travis' medical expenses as a result of the collision. Appellant points out that a disproportionate percentage of the settlement, $59,500.00, was given to Travis' wife, whereas Travis, as the injured party, received only $659.24. The issue is whether this apportionment unlawfully reduced the amount of Appellant's lien for future benefits, which is permitted by statute, thereby denying Appellant's full statutory credit.

As a preliminary matter, we address the issues of what statute applies under the facts of this case. Both parties have as-

sumed the new Workers' Compensation Act applies; however, the plain language of the enabling legislation and Texas case law provide otherwise. In particular, Appellant assumed in this appeal that section 417.002 of the new Texas Workers' Compensation Act applied to this case. TEX.LAB.CODE ANN. § 417.002 (Vernon Pamph.1996). However, the effective date of this Act was September 1, 1993. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 8, 1993 Tex.Gen.Laws 987, 1273. Moreover, the case of *Guillot v. Hix,* 838 S.W.2d 230, 235 (Tex.1992) holds that the workers' compensation carrier's subrogation claim accrues at the same time the employee's action against the third party accrues.

Appellant's claim in this case, then, accrued as of the date of Travis' injury, February 23, 1993. Therefore, the new Texas Workers' Compensation Act does not apply to the facts of the instant case. Rather, the prior statute controls.[1] Neither party presents contrary authority, therefore, we are bound to follow the law as expressed by the legislature and will use the law as it existed prior to its 1993 amendment. For purposes of this appeal, then, we construe Appellant's arguments in light of the applicable statute.[2]

Appellant complains about the manner in which the settlement in this case was structured, citing subsections 417.002(a) and (b) of the new Texas Workers' Compensation Act.[3] We therefore review whether a settlement can be structured in this manner under the applicable section of the former Workers' Compensation Act, which read:

> If at the conclusion of a third party action, a workers' compensation claimant is entitled to compensation, the net amount recovered by the claimant from the third

party action shall be applied to reimburse the insurance carrier for past benefits and medical expenses paid. Any amount in excess of past benefits and medical expenses shall be treated as an advance against future benefit payments of compensation that the claimant is entitled to receive under this Act. If the advance is adequate to cover all future compensation and medical benefit payments as provided by this Act, the insurance carrier is not required to make further payments. If the advance is insufficient, the insurance carrier shall resume the payments when the advance is exhausted. The reasonable and necessary medical expenses incurred by the claimant because of the injury shall be deducted from the advance in the same manner as benefit payments.

Act of December 11, 1989, 71st Leg., 2d C.S., ch. 1, § 4.05, 1989 Tex.Gen.Laws 1, 33 (amended 1993).

■ In light of the statutory requirements, we look to the case law regarding a workers' compensation carrier's rights to subrogation where a third-party tortfeasor is involved. The right of a workers' compensation insurer is statutory. *See Gautreaux v. City of Port Arthur,* 406 S.W.2d 531, 534 (Tex.Civ.App.—Beaumont 1966, writ ref'd n.r.e.). It is well-settled Texas law that a workers' compensation carrier is entitled to recover one hundred percent of compensation paid to an insured employee as a result of the employee's recovery of damages from a third party in a negligence action. *See Watson v. Glens Falls Ins. Co.,* 505 S.W.2d 793, 795–96 (Tex.1974). The workers' compensation claimant has no right to any funds received from a third-party tortfeasor until

---

1. Act of December 11, 1989, 71st Leg., 2d C.S., ch. 1, § 4.05, 1989 Tex.Gen.Laws 1, 33, *amended by* Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex.Gen.Laws 987, 1234 (current version at TEX.LAB.CODE ANN. § 417.001 (Vernon Pamph.1996)).

2. We note, however, that the new worker's compensation statute was intended as a recodification only, without substantive change to the law. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 6, 1993 Tex.Gen.Laws 987, 1273.

3. Section 417.002(a) provides:

the net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.

TEX.LAB.CODE ANN. § 417.002(a) (Vernon Pamph. 1996). Section 417.002(b) provides:

Any amount recovered that exceeds the amount of the reimbursement required under subsection (a) shall be treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive under this subtitle.

*Id.* § 417.002(b) (Vernon Pamph.1996).

the workers' compensation carrier receives its payment in full. *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 856 S.W.2d 194, 199 (Tex.App.—Dallas 1993, no writ).

 Any amount of payment received by a claimant from a third-party over the amount used to reimburse the workers' compensation carrier is treated as an advance against future payments by the carrier. *Charter Oak Fire Ins. Co. v. Currie,* 670 S.W.2d 368, 370 (Tex.App.—Dallas 1984, no writ). When future workers' compensation benefits are contemplated, a court must then award any excess in proceeds of the claimant's settlement with the third party to the claimant, and should then declare that the carrier is entitled to receive a credit for future benefits up to the amount of the excess recovery and is to resume payment of future benefits only when the excess recovery is exhausted. *Employers Casualty Co. v. Henager,* 852 S.W.2d 655, 660 (Tex.App.—Dallas 1993, writ denied) (op. on reh'g) (construing predecessor statute); *see* Act of December 11, 1989, 71st Leg., 2d C.S., ch. 1, § 4.05, 1989 Tex.Gen.Laws 1, 33 (amended 1993).

 Since a workers' compensation insurer has a statutory right to subrogation, its right to reduce its liability due to a payment by a third party must not be compromised. *American General Fire & Casualty Co. v. McDonald,* 796 S.W.2d 201, 204 (Tex.App.—San Antonio 1990, writ denied). The workers' compensation carrier can only seek to be reimbursed from the workers' compensation claimant. *See* Act of December 11, 1989, 71st Leg., 2d C.S., ch. 1, § 4.05, 1989 Tex. Gen.Laws 1, 33 (amended 1993). The carrier's right to receive a credit for future benefits, then, must also be protected since once the excess recovery by the employee is exhausted, the carrier must resume payments of future benefits. The plain language of the former statute places a direct correlation between the recovery of the employee and the requirement of the workers' compensation carrier to make future benefit payments; if the recovery is sufficient, no future payments are required, or if it is insufficient, the carrier must resume benefit payments. *Id.* This

correlation places an emphasis on the claimant's recovery from a third-party tortfeasor. Having reviewed the applicable law, we look to the facts of the case. At the heart of Appellant's complaint is the apparent disparity between the $659.24 allocation of settlement funds to Travis and the $59,500.00 allocation to his wife. The agreed judgment reflects that the court ordered this sum to Linda Travis "for loss of consortium and other personal expenses and claims growing out of said accident, past and future."

In response to Appellant's complaint, Travis asserts these settlement funds allocated to his wife were designed to repay her wages when she served as a home health care provider for Travis during the time he was unable to care for himself. Travis argues his wife could have made a claim against the Appellant for these wages, but instead she opted to recover these wages directly through the settlement. The record reflects Travis' wife filed with the court a "Notice of Right to Reimbursement" on June 28, 1994, more than a month and a half after the settlement conference and judgment. This notice states in part:

> Linda Jo Travis notes a right to minimum wage for the time from 2–24–93 to 4–23–94 or 14 months at 24 hours a day (or for $42,840.00) for past care of Boyd Travis. She had agreed to not submit this claim to the TWCC, but instead to seek reimbursement directly from the tortfeasor in a related claim. However, she would request the forum to take note of said claim since the carrier seems to now be contesting her receipt of reimbursement in the related claim.

Linda Jo Travis testified at the settlement conference that she could have sent a bill to Appellant but did not, and that she was being compensated directly in the settlement. She did not testify about the hours spent performing home health care services.

 Appellant points out that the intent of the Appellees in apportioning the settlement proceeds is not an issue, because Appellant does not need to show bad faith or a collusive apportionment on the part of the Appellees. It is not the intent of the apportionment, but the effect of the apportionment, that is the determining factor. Regardless of the Ap-

pellees' intent, the effect of the apportionment circumvents the statute and compromises Appellant's right to subrogation—a right that cannot be compromised. *See Insurance Co. of North Am. v. Wright*, 886 S.W.2d 337, 342 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

The effect of the apportionment in this case is to prejudice Appellant's rights to recoup its statutory credit against future payments. At a minimum, Appellant is entitled to a proper disclosure and accounting of the alleged wages that were sought by Linda Jo Travis directly through the settlement. While the net effect of filing a claim with Appellant or seeking recovery through the settlement may be the same in this case, we cannot condone the method that Travis asserts was used in this case to recover his wife's wages as a home health care provider. If a recovery for wages is warranted, the proper means would be for Travis' wife to file a direct claim with Appellant, and then allow Appellant to deduct the wages from the excess recovery that, in theory, would have been apportioned to Travis.

We sustain Appellant's point of error.

### APPELLATE FEES MUST BE REQUESTED IN THE TRIAL COURT

Finally, we address the cross-point raised on appeal by the attorney ad litem. The attorney ad litem makes a claim for attorney's fees for post-trial work and explains he has completed an additional six hours of work since the trial court appearance. The ad litem asserts it is appropriate to assess the fees against Appellant as the intervenor.[4] We disagree.

As the prevailing party on appeal, Appellant is not responsible for costs. TEX. R.APP.P. 89. In addition, we note there is no indication in the record that the ad litem requested attorney's fees or that post-trial attorney's fees were awarded in the judgment. The record merely reflects that at the final hearing in the case, the ad litem advised the trial court that he was not requesting any further fees in the case.

We overrule the cross-point on appeal.

Accordingly, the judgment is reversed and remanded to the district court for proceedings consistent with this opinion.

---

4. The cross-point of error reads, "[t]here is good cause on the face of the record to assess attorney ad litem fees for the post trial and appeals process."