# NO. 12-07-00223-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BENCHMARK INSURANCE COMPANY,*<br>*APPELLANT* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *ROBERT WILLIAM SULLIVAN,*<br>*APPELLEE* | § | *SHELBY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Benchmark Insurance Company appeals the trial court's judgment, in which the court found that the amount of Benchmark's statutory workers' compensation lien was $190,465.10 and that Appellee Robert William Sullivan's attorney was entitled to one-third of the lien as attorney's fees. Benchmark raises five issues on appeal. We affirm.

### BACKGROUND

While Sullivan was working for Silva-Tech South, Inc., his vehicle was involved in a collision with a truck driven by Johnathan Santos, who was an employee of Willoughby Trucking, Inc. Sullivan requested and received workers' compensation benefits from Benchmark, which was Silva-Tech's workers' compensation insurer. Sullivan also pursued a third party action against, among others, Santos and Willoughby Trucking.

Attorney Don Wheeler filed this third party suit on Sullivan's behalf. In his prosecution of the case on Sullivan's behalf, Wheeler obtained discovery, prepared the case for trial, and represented Sullivan at trial. Wheeler also paid all expenses related to the case. Ultimately, Sullivan was awarded a significant verdict. By this time, Wheeler had worked on the case for more than two years. During this period, Benchmark hired the law firm of Dean G. Pappas & Associates, P.C., to

represent it. From that time until the jury returned its verdict for Sullivan, Pappas filed a petition in intervention, served written discovery on Sullivan, made a motion for partial summary judgment and sanctions against Sullivan, and entered into a Rule 11 agreement with Sullivan in which Sullivan acknowledged that Benchmark had a statutory lien against any judgment rendered in the case.

Wheeler filed a motion for judgment on Sullivan's behalf. Pappas filed a response to the motion for judgment on Benchmark's behalf asserting that the amount of its workers' compensation statutory lien was $199,656.10. In accordance with Texas Labor Code, section 417.003(c), Pappas asserted that the attorney's fees related to the recovery of the statutory lien should be distributed entirely to Pappas.

The trial court held a hearing on Sullivan's motion for judgment. At the hearing, Sullivan argued that the amount of the workers' compensation statutory lien was $190,456.10 rather than the $199,656.10 amount Benchmark claimed because, according to Sullivan, Benchmark's lien amount improperly included administrative costs. Sullivan argued that the statutory lien should be further reduced since (1) the jury impliedly reduced his recovery because he was not wearing his seatbelt and (2) Benchmark caused Sullivan to undergo an unnecessary and ineffective type of back surgery rather than the more expensive type of back surgery his doctor recommended. Sullivan further requested that Wheeler be awarded one-third of Benchmark's recovery on the lien as attorney's fees. In response, Benchmark argued that the amount of its statutory lien should not be reduced. At the hearing on Sullivan's motion, Benchmark adjusted its position concerning attorney's fees and argued that Pappas and Wheeler should share attorney's fees. Subsequently, the trial court rendered a judgment that embodied Sullivan's positions concerning the statutory lien and attorney's fees.

Thereafter, Benchmark filed a motion for new trial.[1] The trial court conducted a telephone hearing on Benchmark's motion and, ultimately, denied the motion. The trial court later reconsidered its ruling, and granted sua sponte Benchmark's motion for new trial. In its order granting Benchmark a new trial, the trial court severed Benchmark's claims from the remainder of

---

[1] After the verdict, Benchmark also filed (1) a motion to have funds deposited into registry of the court, (2) an application for temporary restraining order and temporary injunction, (3) multiple affidavits, (4) a motion to set aside the order of severance, (5) a first amended motion to determine amount of lien, (6) a motion for entry of judgment, (7) a first amended motion for new trial, and (8) a notice of appeal.

the case and ordered the parties to mediation.

The trial court subsequently conducted another evidentiary hearing on the amount of Benchmark's lien.[2] Benchmark asserted that the proper amount of its lien was $196,601.14. To support this contention, Benchmark offered the affidavit of Kathy Murphy, which was signed only five days earlier. Sullivan objected to the Murphy affidavit as hearsay. The trial court sustained Sullivan's objection. As he had done previously, Sullivan asserted that the amount of the statutory lien was $190,456.10. However, in this instance, Sullivan did not seek to have the amount of the lien reduced on equitable grounds. Sullivan further argued that Wheeler should be paid one-third of the statutory lien as attorney's fees while Benchmark again argued that the attorney's fee apportionment should be shared between Pappas and Wheeler. The trial court found the amount of Benchmark's statutory lien to be $190,465.10, awarded Wheeler one-third of the statutory lien as attorney's fees, declined to award Pappas any attorney's fees, and found Benchmark's portion of the expenses to be $10,079.59. The trial court did not file, nor did Benchmark request, findings of fact and conclusions of law. This appeal followed.

## AMOUNT OF BENCHMARK'S STATUTORY LIEN

In its second, third, and fourth issues, Benchmark argues that the trial court erred in finding that the amount of Benchmark's statutory lien was $190,465.10. Specifically, in its fourth issue, Benchmark contends that the trial court's exclusion of Murphy's affidavit was error that resulted in the trial court's inaccurate finding as to the amount of the lien. In its second issue, Benchmark argues that Sullivan's contention that the parties agreed to the $190,465.10 lien amount constituted an avoidance or affirmative defense that Sullivan neither pleaded nor proved. In its third issue, Benchmark contends that the finding that the amount of the lien was $190,465.10 resulted in Sullivan's obtaining a double recovery because he received additional benefits that were not factored into the lien amount.

**Admissibility of Murphy's Affidavit**

We review a trial court's exclusion of evidence based on an abuse of discretion standard.

---

[2] In its brief, Benchmark refers to this evidentiary hearing as the second trial.

3

*See Lively v. Blackwell*, 51 S.W.3d 637, 641 (Tex. App.–Tyler 2001, pet. denied). A trial court abuses its discretion when its decision is unreasonable, arbitrary, or made without regard for any guiding rules or principles. *Id.* Further, we uphold a trial court's evidentiary finding if there was any proper ground for the ruling. *Id.*

Hearsay is an out of court statement offered to prove the truth of the matter asserted. *See* TEX. R. EVID. 801(d). Generally, unless offered under an applicable exception to the hearsay rule, an affidavit is inadmissible hearsay and constitutes no evidence. *See Anthony Pools v. Charles & David, Inc.*, 797 S.W.2d 666, 676 (Tex. App.–Houston [14th Dist.] 1990, writ denied). But business records may be authenticated by affidavit, provided that the affidavit has been on file for at least fourteen days prior to trial. *See* TEX. R. EVID. 902(10).

In the instant case, Benchmark attempted to prove the amount of its lien solely through the testimony contained in Murphy's affidavit. When Sullivan objected to the affidavit as hearsay, Benchmark argued that the affidavit was based on personal knowledge, had exhibits showing the amounts paid to Sullivan, was never objected to by Sullivan, had been on file numerous times, and was supplemented to prove the recent payments made to Sullivan. The trial court sustained Sullivan's objection.

Our review of the record demonstrates that Murphy's affidavit had been signed only five days prior to the subsequent trial. Because the affidavit was not on file for the requisite fourteen days before the subsequent trial, it could not serve as an authentication to business records. *See* TEX. R. EVID. 902(10). None of Murphy's previous affidavits were offered in evidence. Since Murphy's affidavit did not comply with an exception to the hearsay rule, it was inadmissible hearsay. *See Anthony Pools*, 797 S.W.2d at 676. Therefore, we cannot conclude that the trial court abused its discretion in sustaining Sullivan's hearsay objection. Benchmark's fourth issue is overruled.

**Proof of Amount of Workers' Compensation Statutory Lien**

The right of a workers' compensation insurer is statutory. *Tex. Workers' Comp Ins. Fund v. Travis*, 912 S.W.2d 895, 897 (Tex. App.–Fort Worth 1995, no writ); *see Gautreaux v. City of Port Arthur*, 406 S.W.2d 531, 534 (Tex. Civ. App.–Beaumont 1966, writ ref'd n.r.e.). It is well settled Texas law that a workers' compensation carrier is entitled to recover all compensation paid to an insured employee as a result of the employee's recovery of damages from a third party in a

negligence action. *Travis*, 912 S.W.2d at 897; *see* TEX. LAB. CODE ANN. § 417.001(b) (Vernon 2006). The workers' compensation claimant has no right to any funds received from a third party tortfeasor until the workers' compensation carrier receives its payment in full. *Travis*, 912 S.W.2d at 897–98. When the amount of this statutory lien is not agreed upon by the parties, the insurer must offer evidence to prove the amount of benefits paid by offering evidence. *Lege v. Jones*, 919 S.W.2d 870, 874 (Tex. App.–Houston [14th Dist.] 1996, no writ); *see also* **Tex. Mut. Ins. Co. v. Ledbetter**, 251 S.W.3d 37, 37 (Tex. 2008).

In its second and third issues, Benchmark argues that Sullivan failed to demonstrate that the parties agreed to a statutory lien of $190,465.10 and that the trial court's determination of the statutory lien resulted in a double recovery for Sullivan. We disagree. Benchmark bore the burden to prove the amount of its lien. *See* **Lege**, 919 S.W.2d at 874. Once the trial court sustained Sullivan's objection to Murphy's affidavit, Benchmark failed to offer any additional admissible evidence supporting the amount of its lien. Rather, Benchmark simply argued its case to the court. Because Sullivan agreed that the statutory lien was at least $190,465.10 and because Benchmark argued that the lien was more than that amount, the trial court did not abuse its discretion in its determination that the lower amount asserted by Sullivan was the amount of the lien.[3] *See* **Lege**, 919 S.W.2d at 874 (An insurer has no duty to present evidence proving amount of the portion of the lien upon which the parties agree.).

Similarly, Benchmark failed to prove that Sullivan was receiving a double recovery. Had Benchmark established through admissible evidence that it had paid more in benefits, the trial court would have had no discretion but to award that amount. *See* **Travis**, 912 S.W.2d at 897. We note that the case at hand is distinguishable from **Ledbetter**. In **Ledbetter**, the court commented that the insurer was surprised by the need to present evidence. *See* **Ledbetter**, 251 S.W.3d at 37. Based on our review of the evidence, it is apparent Benchmark understood that it was required and, in fact, sought to present evidence in support of the value of its lien, but neglected to present such evidence

---

[3] While the parties did not specifically agree to the exact amount of the lien, the record supports that both parties acknowledge the existence of a valuable lien. Thus, it logically follows that there is an agreement that the amount of the lien is at least the lower amount asserted before the trial court. Yet, for Benchmark to be entitled to a lien with a greater value than the amount to which Sullivan agreed, Benchmark was required to offer admissible evidence.

5

in an admissible form. Because Benchmark failed to satisfy its burden, we hold that the trial court did not abuse its discretion in determining the amount of the statutory lien to be $190,465.10. Benchmark's second and third issues are overruled.

**APPORTIONMENT OF ATTORNEY'S FEES**

In its first issue, Benchmark argues that the trial court erred in finding that Wheeler was entitled to one-third of the lien as attorney's fees because Wheeler sought to reduce the amount of Benchmark's lien and failed to notify Benchmark that Sullivan received monies from third parties.

## Standard of Review

We review the trial court's award of attorney's fees under Texas Labor Code, section 417.003 for abuse of discretion. *See Erivas v. State Farm Mut. Auto. Ins. Co.*, 141 S.W.3d 671, 676 (Tex. App.–El Paso 2004, no pet.). When a trial court awards attorney's fees under section 417.003, and no findings of fact or conclusions of law are filed or requested, we imply all necessary findings to support the trial court's judgment. *See Hartford Acc. & Indem. Co. v. Buckland*, 882 S.W.2d 440, 446 (Tex. App.–Dallas 1994, writ denied).

## Applicable Law

Texas Labor Code, section 417.003 states, in pertinent part, as follows:

(a)    An insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the insurance carrier. In the absence of an agreement, the court shall award to the attorney payable out of the insurance carrier's recovery:

(1)    a reasonable fee for recovery of the insurance carrier's interest that may not exceed one-third of the insurance carrier's recovery; and

(2)    a proportionate share of expenses.

....

(c)    If an attorney actively representing the insurance carrier's interest actively participates in obtaining a recovery, the court shall award and apportion between the claimant's and the insurance carrier's attorneys a fee payable out of the insurance carrier's subrogation recovery. In apportioning the award, the court shall consider the benefit accruing to the insurance carrier as a result of each attorney's service. The total attorney's fees may not exceed one-third of the insurance carrier's recovery.

TEX. LAB. CODE ANN. § 417.003 (Vernon 2006). Thus, the attorney for an injured worker is entitled

to attorney's fees from the workers' compensation statutory lien if one of the following three situations exists: (1) the insurer hires an attorney to represent it but the attorney does not actively represent it; (2) the worker's attorney represents both the worker and the insurer; or (3) the insurer is actively represented by its attorney who participates in obtaining a recovery. *See City of Arlington v. Lummus*, 871 S.W.2d 536, 537 (Tex. App.–Fort Worth 1994, writ denied). Active representation requires that an attorney take steps, adequate when measured by the difficulty of the case, toward prosecuting the claim. *Buckland*, 882 S.W.2d at 447. When a comparison of the respective roles of the attorneys shows that one attorney was primarily responsible for recovery of the subrogation amount, a trial court's finding that the fee should be apportioned completely to that attorney is not an abuse of discretion. *See Lummus*, 871 S.W.2d at 538.

**Application**

Benchmark argues that section 417.003(c) applies because Pappas actively participated in obtaining Benchmark's recovery. On the other hand, Sullivan argues that section 417.003(a) applies because Pappas failed to actively participate in the litigation. The record reflects that Benchmark allowed Wheeler to do all of the work and bear all of the expenses appertaining to the prosecution of the case against the third parties. Once the amount of work Wheeler conducted culminated in a judgment that satisfied Benchmark's statutory lien, Benchmark filed a response to Sullivan's motion for judgment seeking to have all attorney's fees from the statutory lien awarded to Pappas. Although Benchmark later adjusted its position at the hearing on the motion for judgment by requesting that Pappas and Wheeler share attorney's fees, its initial position indicates its level of cooperation with Wheeler in his prosecution of the case on Benchmark's behalf.

Nonetheless, we acknowledge the accuracy of Benchmark's assertion that Wheeler, in fact, requested that the statutory lien be reduced at the initial hearing on the motion for judgment. After it reduced the lien, however, the trial court ordered sua sponte a new trial to determine the amount of the lien. At the subsequent trial, Wheeler declined to request that the statutory lien be reduced either on grounds that (1) there existed an implied finding of negligence on Sullivan's part or (2) Benchmark failed to authorize a necessary surgery for Sullivan. Instead, Wheeler acknowledged that the statutory lien was $190,465.10. Therefore, we cannot conclude that the trial court abused its discretion by awarding one-third of the lien as attorney's fees to Wheeler even if such an award resulted in attorney's fees being apportioned one hundred percent to Wheeler and zero percent to

7

Pappas.  *See **Lummus***, 871 S.W.2d at 537.  Benchmark's first issue is overruled.

## JUDGMENT IN THE INTERPLEADER ACTION

In its fifth issue, Benchmark argues that the trial court erred in entering a judgment in an interpleader action filed by Home State County Mutual Insurance Company.  Home State is not a party to this appeal.  Its interpleader action  and the underlying action made the basis of this appeal have different cause numbers in the trial court.  As such, we decline to address Benchmark's fifth issue because it is not necessary to final disposition of this appeal.  *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having overruled Appellant's first, second, third, and fourth issues, we ***affirm*** the trial court's judgment.


  BRIAN HOYLE
Justice


Opinion delivered April 30, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(PUBLISH)